| | |
|---|---|
| SUPREME COURT OF THE STATE OF NEW YORK<br>COUNTY OF NEW YORK<br>-----------------------------------------------------------<br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY; INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE; OLD REPUBLIC UNION INSURANCE COMPANY, all severally subscribing to a policy of insurance under Account No. 445023,<br><br>*Petitioners,*<br><br>- against -<br><br>DONGTAI INVESTMENT GROUP, LLC D/B/A CROWNE PLAZA SUITES, | Index No. 650922/20<br><br>**PETITION** |

Petitioners, Certain Underwriters At Lloyd's, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company Of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Princeton Excess And Surplus Lines Insurance Company, International Insurance Company of Hannover SE, and Old Republic Union Insurance Company, all severally subscribing to a policy of insurance bearing Account No. 445023 (collectively, "Petitioners" or "Insurers") (collectively, "Petitioners" or "Insurers"), by and through their attorneys, Clark & Fox, as and for their petition against Respondent Dongtai Investment Group, LLC d/b/a Crowne Plaza Suites, allege as follows:

## THE PARTIES

1. Certain Underwriters at Lloyd's, London ("Underwriters") are individual underwriting Syndicates, each with liability for its own proportionate share of the risk underwritten by them, and not jointly or one for the other, organized and existing under the laws of the United Kingdom with their principal place of business located in London, England.

2. QBE Specialty Insurance Company ("QBE") is a foreign insurance company authorized to issue policies of insurance in various states, including New York, with its principal place of business at 88 Pine Street, New York, New York 10005.

3. General Security Indemnity Company ("General Security") is a foreign insurance company authorized to issue policies of insurance in various status, including New York.

4. Steadfast Insurance Company ("Steadfast") is a foreign insurance company authorized to issue policies of insurance in various states, including New York.

5. United Specialty Insurance Company ("USIC") is a foreign insurance company authorized to issue policies of insurance in various states, including New York.

6. Lexington Insurance Company ("Lexington) is a foreign insurance company authorized to issue policies of insurance in various states, including New York.

7. Princeton Excess and Surplus Lines Insurance Company ("Princeton") is a foreign insurance company authorized to issue policies of insurance in various states, including New York.

8. International Insurance Company of Hannover SE ("International Insurance") is a foreign insurance company authorized to issue policies of insurance in various states, including New York.

9. Old Republic Union Insurance Company ("Old Republic") is a foreign insurance company authorized to issue policies of insurance in various states, including New York.

10. Dongtai Investment Group, LLC d/b/a Crowne Plaza Suites ("Dongtai") is a limited liability company organized and existing under the laws of the State of Texas and has its principal place of business in Texas.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to CPLR §§ 301, 302(a)(1) 7501, 7503(a).

12. Venue is proper in this Court pursuant to CPLR §§ 501 and 7502(a).

## THE RELEVANT FACTS

**Dongtai is formed, and controlling member Xu is vested with exclusive authority to manage its affairs.**

13. On or about December 15, 2016, Dongtai filed a certificate of formation with the Texas Secretary of State granting it authority to conduct business pursuant to the Limited Liability Laws of the State of Texas.

14. Following Dongtai's formation, its members bound themselves to an operating agreement dated May 9, 2017.

15. The operating agreement describes Dongtai's business as "Hotel Management, Hospitality Services, Travel Services, International Trading, etc."

16. The operating agreement appoints as manager Dongtai's controlling member, Ningbo Xu, vests Xu with broad authority to "sign on all of the legal documents, tax reporting, daily management, banking, hiring, contracting, accounting, etc.," and grants him exclusive control of Dongtai's business:

> The principal member, Mr. Ningbo Xu, accounts for 50% of the ownership, and has the right of controlling stake over the Company and has the right to make final decision on the Company's activities and management; and also as the Company's Chairman, Mr. Ningbo Xu will be in charge of the Hotel operations and Hotel's HR activities. Mr. Ningbo Xu will be the only member representative to negotiate with

the Hotel Management for the Hotel's daily management. Mr. Ningbo Xu is the only member to be authorized to sign on the Hotel Closing Documents, and shall have full, complete and exclusive authority, power and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business property and affairs. Additionally, as required by Law and as the nature of that the three of the four Members live in foreign country, all of the four Members agreed and appointed Mr. Ningbo Xu as the Company's manager with the duties as, included by not limited as following, signing on all the legal documents, tax reporting, daily management, banking, hiring, contracting, etc.

17. The agreement is signed by Dongtai's four members, and describes their interest in the company as follows: (i) Ningbo Xu, 50.02% interest; (ii) Zhonghua Yu, 16.66%; (iii) Xiongen Jiao, 16.66% interest; (iv) Pengfei Zhou, 16.66% interest.

**Dongtai purchases the hotel.**

18. Dongtai purchased a Crowne Plaza-branded hotel located at 9090 Southwest Freeway, Houston, Texas (the "hotel") on or about May 19, 2017 for the sum of $14.5 million.

19. According to the HUD-1 statement, the purchase was financed by capital contributions from Dongtai's members in the amount of $3,894,201.52, and debt financing from New Era Life Insurance Company and Philadelphia American Life Insurance Company in the amount of $10 million.

20. According to the HUD-1, Xu was required to make a personal contribution of $1.46 million toward the hotel's purchase price.

**Dongtai engages Ameristar to manage the hotel.**

21. In connection with its intended purchase of the hotel, Dongtai entered into a standard hotel management agreement with Ameristar Hospitality Group ("Ameristar") for a two-year term starting March 4, 2017.

22. According to the agreement, Ameristar's responsibilities were limited to routine day-to-day operation of the hotel, including: (i) purchasing supplies and services for its operation; (ii) general maintenance and upkeep; (iii) rent collection; and (iv) record-keeping.

23. The agreement prohibits Ameristar from negotiating or signing contracts with legal counsel for or on Dongtai's behalf, and states it "shall not result in the creation of an agency, partnership or other relationship between Operator [Ameristar] and Owner [Dongtai]."

24. The agreement is signed by Ningbo Xu and Michael Udayan on behalf of Dongtai and Ameristar, respectively.

**The insurers issue the policy.**

25. In reliance on information contained in a policy application, the insurers issued a commercial property insurance policy to Dongtai under account number 445023, effective May 30, 2017 to May 30, 2018 ("the policy").

26. The policy covers loss or damage to the hotel, subject to the policy's terms and conditions.

27. The policy contains a $562,000.00 deductible for named storms, and "explicitly excludes all flooding, including but not limited to flooding during windstorm events."

28. The arbitration clause in the policy contains a New York forum and choice-of-law provision.

**The insurers are notified that a claim is being made for an alleged August 28, 2017 loss.**

29. The insurers first learned about the loss and claim on September 20, 2017, when they received a notice of occurrence dated September 18, 2017.

30. The notice states wind caused damage to the hotel on August 28, 2017, i.e., three weeks earlier, and that the hotel's flood insurer was given prior notice of the loss and was responding to it.

31. The notice identifies "Scottsdale Insurance Company" as the hotel's property insurer, and requests the insurers contact an individual named Michael Uduyan ("Uduyan") for information about the loss.

**Uduyan engages counsel to pursue claims involving an alleged August 25, 2017 loss.**

32. On September 12, 2017, Uduyan engaged John A. Haddaway, a public adjuster at Claim Nation, Inc., to pursue a building and contents claim involving an alleged August 25, 2017 loss.

33. Although the retainer contains a line meant to identify the name of the insurer against whom claims would be brought, it was left blank.

34. On December 26, 2017, Uduyan engaged the law firm of McClenny Moseley & Associates, PLLC ("MM&A") to pursue an insurance claim that also occurred on August 25, 2017.

35. The retention agreement does not contain a wet ink signature from Xu, but rather a scripted typeface bearing his name.

36. No textual or graphic statements authenticating the typeface appear next to it.

37. The engagement letter identifies Uduyan as MM&A's client contact.

38. The redacted version of the engagement letter MM&A provided does not identify the name of the insurer it intended to pursue claims against or why.

39. Dongtai did not grant MM&A or anyone else authority to pursue claims against the insurers on December 26, 2017, or at any other relevant time.

6

**The insurers deny coverage, arbitration is invoked, and a panel is formed.**

40. The insurers investigated the claim, and issued two declination letters based on their determination that the damages sought were non-covered or excluded.

41. MM&A notified the insurers on or about December 28, 2018 that they represented Dongtai with respect to the claim, demanded a copy of Dongtai's policy, and stated they intended to seek damages for the loss.

42. The insurers' Texas counsel, Phelps Dunbar, LLP, invoked the policy's arbitration clause in their letter of April 20, 2018.

43. As mandated by the policy, the insurers and MM&A appointed party arbitrators, and the two arbitrators appointed as umpire Paul J. Van Osselaer, Esq. to decide matters in difference between them.

**The panel issues an initial discovery order.**

44. The arbitral panel issued an initial discovery order on June 30, 2019 permitting the parties to engage in certain pre-trial discovery, and directing the arbitration be held in New York starting February 17, 2020.

45. The order states discovery must "conform to applicable New York law," and that the panel must "apply New York law in deciding all issues in dispute."

46. The order also grants the parties authority to issue subpoenas pursuant to CPLR §§ 2302 and 7505.

**MM&A seek damages based on ongoing physical deterioration of the hotel and projected future income losses.**

47. MM&A served an amended statement of claim alleging the loss resulted in substantial damage to the hotel, and that it intended to recoup those damages from the insurers.

48. The statement of claim further alleges Dongtai engaged MM&A to pursue the claim, and that Dongtai complied with "all conditions precedent" to recovery under the policy.

49. MM&A included in the claim a cause of action seeking recovery of incurred and to be incurred legal fees.

50. In its interrogatory responses, MM&A's only fact witness, Michael Uduyan, explained that no post-loss repairs to the hotel were made, and that the alleged damage to the hotel was based on cost projections he anticipated would be incurred should repairs be made necessitating the hotel's closure.

**MM&A advise the insurers that Uduyan does not have meaningful information about the claim, and the insurers promptly undertake further investigation.**

51. On January 8, 2020, the insurers were informed that Uduyan—despite his sworn statement to the contrary—has no meaningful information about the claim, and requested he be allowed to provide a stipulation or affidavit in lieu of testifying at arbitration.

52. The insurers subsequently determined from their investigation that Uduyan has been a witness or defendant in numerous lawsuits accusing him or others of fraud, including a lawsuit pending in the United States District Court, Southern District of Texas entitled *Xiongen Jiao v. Ningo Xu and Dongtai Investment Group, LLC*, docket no. 4:19-cv-01848 ("the fraud action").

**The fraud action.**

53. In the fraud action, Dongtai's members allege that Ningbo Xu, the only member of Dongtai who had actual authority to engage MM&A on December 26, 2017, misappropriated funds reserved for hotel upkeep and repair.

54. In the fraud action, Uduyan testified that the hotel—Dongtai's only tangible asset—has and continues to sustain unfettered financial losses resulting in ongoing physical deterioration

due to Dongtai's actions. In the fraud action, findings have already and will be made that give rise to valid defenses to coverage under the policy.

55.  For example, Dongtai submitted a HUD-1 statement in his policy application that the court in the fraud action determined was "bogus."

**Dongtai learns about the insurance claim.**

56.  On January 29, 2020, the insurers' Texas counsel, Phelps Dunbar, LLP, gave notice of the arbitral proceeding to the court and parties in the fraud action (the "notice letter").

57.  The notice letter states the insurers' concern that persons with an actual interest in the hotel, including Dongtai, may be unaware of it, and that both matters appear to involve interrelated issues concerning the cause of purported economic loss and consequential physical damage to the hotel.

58.  Counsel for Dongtai in the fraud action notified the insurers less than one hour later that the notice letter was their first notice of the claim, stating as follows:

> I represent the Defendants in the Houston federal court case. Mr. Gargano represents Plaintiffs. Today was the first notice I have received from anyone regarding your arbitration proceeding. Please take notice that Judge Ellison issued an injunction order today that may affect your case. This order is adverse to Defendants and I intend to appeal this order in the very near future. There are a couple of remaining motions that need to be addressed and ruled on by the court before the appeal is filed. If you believe you need to intervene, you need to do so ASAP. As a part of the injunction hearing, sworn testimony was obtained from Plaintiffs and Michael Udayan that may or may not be germane to your case.

**Dongtai notifies the insurers that it did not authorize Uduyan or anyone else to sign a retention agreement with MM&A on December 26, 2017.**

59.  That same day, the insurers were informed that Uduyan not only testified about the cause of purported losses to the hotel, but attributed those losses to fiscal mismanagement by Dongtai.

9

60. Public records in the fraud action do not show that Uduyan informed Dongtai or anyone else that he was simultaneously pursuing an insurance claim in which he attributed all or much of the same damage to the storm.

61. On February 1, 2020, the insurers received a letter from Dongtai's counsel in the fraud action stating, in pertinent part, as follows:

> I am writing in regard to a I received a letter in the above-referenced case on January 29, 2020, notifying us that Dongtai Investment Group, LLC is currently pursuing a breach of contract claim against your clients for wind related damage to the Crown Plaza Hotel located at 9090 Southwest Freeway in Houston. I represent Ningbo "Kevin" Xu, Dongtai Investment Group, LLC, and another Defendant in the above-styled case.
>
> Prior to receiving this letter, I had no knowledge whatsoever about any such claim. I asked my client about the claim referred to in your letter and he informed me that he too was unaware of any such claim being pursued on behalf of Dongtai Investment Group, LLC.
>
> Based on the date of loss referred to in your letter, I am assuming that this claim may be related to Hurricane Harvey. In August 2017, my client, Mr. Xu, was the managing member and majority shareholder of Dongtai. Mr. Udayan (the person referred to in your letter) was the manager of the Crown Plaza Hotel during this time period. That said, he did not have any type of management role or ownership interest in Dongtai Investment Group, LLC. I asked my client whether he authorized Mr. Udayan to pursue any such claim on behalf of Dongtai. My client informed me that he was completely unaware of any such claim and that he never authorized Mr. Udayan to pursue any such claim on behalf of Dongtai Investment Group, LLC.

62. On February 3, 2020, counsel for the insurers notified Dongtai in the fraud action that: (i) Uduyan was pursuing a claim against the insurers; (ii) the panel directed that arbitration proceedings begin February 17, 2020 in New York; and (iii) Uduyan is expected to appear in person to testify concerning the claim.

63. Soon after, counsel for the insurers received an affidavit from Ningbo Xu declaring that Uduyan lacked actual authority to engage MM&A or pursue this claim.

## AS AND FOR A FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

64. MM&A did not, at any relevant time, obtain actual authority from Dongtai to pursue this claim.

65. Dongtai did not authorize MM&A to pursue this claim.

66. MM&A required actual authority from Dongtai to pursue claims under the policy.

67. MM&A does not represent Dongtai, and has no ascertainable rights of its own under the policy.

68. Dongtai has not asserted claims under the policy.

69. There is no dispute concerning coverage.

70. No arbitrable claims have been made.

71. The insurers are entitled to a judgment declaring that MM&A has no authority to pursue claims under the policy for the alleged loss, together will together with all legal fees and expenses incurred and to be incurred by the insurers to date.

## AS AND FOR A SECOND FIRST CAUSE OF ACTION FOR A PRELIMINARY ENJUNCTION

72. The insurers repeat all previous allegations.

73. MM&A did not, at any relevant time, obtain actual authority from Dongtai to pursue this claim.

74. Dongtai did not authorize MM&A to pursue this claim.

75. MM&A required actual authority from Dongtai to pursue claims under the policy.

76. MM&A does not represent Dongtai, and has no ascertainable rights of its own under the policy.

77. Dongtai has not asserted claims under the policy.

78. There is no dispute concerning coverage.

79. No arbitrable claims have been made.

80. The insurers are entitled to a preliminary injunction enjoining MM&A from pursuing claims under the policy, together with all legal fees and expenses incurred and to be incurred by the insurers to date.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR A PRELIMINARY INJUNCTION

81. The insurers repeat all previous allegations made herein.

82. In the fraud action, testimony and findings have been made supporting dismissal of one or more of Dongtai's claims against the insurers.

72. For example, the court found that a HUD-1 statement Dongtai included in underwriting materials submitted to the insurers to induce their issuance of the policy were "bogus."

73. Uduyan also gave testimony in the fraud action in which he attributed the proximate cause of alleged ongoing damage and economic loss at the hotel to Dongtai's conduct alone.

74. The insurers have filed a motion seeking to intervene in the fraud action.

75. No final determination has been made in the fraud action.

76. Relevant if not dispositive records in the fraud action have been filed under seal.

77. The panel will be bound by findings in the fraud action on issues dispositive to all or part of Dongtai's claim, including its claim that the hotel sustained economic loss due to the storm.

78. Any award issued at this time would likely be rendered ineffectual until a final determination of the allegations against Dongtai in the fraud action is made.

79. The insurers are entitled to a preliminary injunction staying arbitration pursuant

12

to CPLR § 7502(c) pending final determination of the fraud action and the release of all sealed records.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR RESCISSION AB INITIO

80. The insurers repeat all previous allegations made herein.

81. In Dongtai's application for the policy, documents were submitted to the insurers concerning the purchase of the hotel intended to induce issuance of the policy.

82. In Dongtai's application for the policy, documents were submitted to the insurers and representations were made concerning the history of Dongtai's business intended to induce issuance of the policy.

83. In Dongtai's application for the policy, documents were submitted to the insurers and representations were made containing financial disclosures and biographical information intended to induce issuance of the policy.

84. In Dongtai's application for the policy, documents were submitted to the insurers and representations were made concerning Dongtai's background intended to induce issuance of the policy.

85. The documentation and representations were false when made.

86. The insurers would not have issued the policy had Dongtai provided accurate disclosures in its policy application.

87. The insurers would not have issued the policy had Dongtai made truthful representations in its policy application.

88. The insurers are entitled to a judgment rescinding the policy and declaring it void *ab initio* based on material misrepresentations in the policy application.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR LEGAL FEES

89. The insurers repeat all previous allegations made herein.

90. Dongtai knew at all relevant times that the fraud action was pending.

91. Dongtai failed to disclose the fraud action to the insurers.

92. Dongtai knew or should have known that issues were being litigated in the fraud action pertinent and material to the insurers' defense.

93. Dongtai refused to consent to an adjournment of this arbitration.

94. Dongtai's failure to disclose the fraud action and its refusal to consent to an adjournment prejudiced the insurers.

95. Dongtai's failure to disclose the fraud action and its refusal to consent to an adjournment caused the insurers to incur significant monetary expense.

96. The insurers are entitled to a judgment against Dongtai or its counsel, MM&A, for all amounts the insurers have and continue to incur due to Dongtai's actions as aforesaid.

WHEREFORE, Petitioners respectfully request that this Court issue judgment as follows: (i) on their first cause of action declaring that MM&A has no authority to pursue claims under the policy for the alleged loss; (ii) on their second cause of action enjoining MM&A from pursuing claims under the policy; (iii) on their third cause of action staying arbitration pending final determination of the fraud action and the release of all records therein; and (iv) on their fourth cause of action for legal fees for amounts that the insurers have and continue to incur based on MM&A's unauthorized pursuit of claims, failure to provide full and complete disclosure of facts material to the issues in dispute, and refusal to grant an adjournment of the arbitration in this matter

upon insurers discovery of the fraud action, together with such other and further relief as the Court deems proper.

Dated: New York, New York
February 10, 2020

                                      **CLARK & FOX**

                                      By: _____
                                      Joshua L. Seltzer
                                      Attorneys for Petitioners
                                      575 Fifth Avenue, 14th Floor
                                      New York, New York 10017
                                      Tel: (646) 506-4709